Melvin W. JACKSON, Plaintiff in Error,

v.

Fred PIERCE, Defendant in Error.

No. 41591.

Supreme Court of Oklahoma.

Sept. 10, 1968.

Charles Sims, Seminole, for plaintiff in error.

Bishop & Wantland, Seminole, for defendant in error.

IRWIN, Vice Chief Justice.

Plaintiff in error, herein referred to as plaintiff, instituted this action for a money judgment for the alleged conversion of mortgaged personal property against defendant in error (defendant) who had purchased the property from the mortgagor. The trial court found "that defendant bought the property from the mortgagor, free and clear of any mortgage lien of plaintiff", and rendered judgment for defendant. Plaintiff has appealed from the order overruling his motion for a new trial.

The record discloses that plaintiff owned a gasoline plant, together with the machinery and equipment connected therewith. He sold the property and accepted as part of the purchase price a promissory note secured by a chattel mortgage from the purchaser-mortgagor. This mortgagor transferred the property and the transferee took the property subject to the mortgage and assumed the liabilities therefor. The transferee is hereinafter referred to as mortgagor. The mortgage was filed for record and the property allegedly converted, a compressor unit, referred to as the "Le-Roi Unit", was covered by the mortgage. The mortgage contained a provision that mortgagor could not sell any part of the mortgaged property without the written consent of mortgagee (plaintiff). Mortgagor subsequently sold this unit to defendant and plaintiff seeks a money judgment against defendant for the alleged conversion.

The only question presented is whether or not plaintiff consented to the sale. Plaintiff contends that he did not consent to the sale and defendant contends that the mortgagor had both the oral and written, express and implied, consent of plaintiff to sell the property.

One of the written instruments relied upon by defendant to show that plaintiff consented to the sale is the following letter from plaintiff to mortgagor, to-wit:

"In response to Mr. Piersdorf telephone call, I have considered your request that you be allowed to release from my mortgage of the LeRoi-Gardner Denver compressor unit, which you say has the value of only $6,500.00.

"It seems to me that this unit, being only a little over 6 years old and having cost over $25,000.00 is certainly worth more than $6,500.00 and that you would be foolish in selling it at $6,500.00. However, if this is surplus to your needs you would have my permission to sell it provided you applied the proceeds to the tail end of your note to me, or provided you replace this machine with equipment of equal or greater value.

"You mentioned installing a water cooling tower at a cost of about $3,500.-00. I will agree that this item could be partially substituted for the machine being sold provided the difference of $3,000.00 were paid to apply on the tail end of your note, or was used to purchase other needed equipment.

"In any event, you will need to furnish me with full description of the property to be removed and the property to be substituted so that our attorneys can draw up a proper substitution agreement.

"* * *."

The Mr. Piersdorf referred to above was in charge of the mortgagor's operations.

He testified that he had told plaintiff that it might be necessary to refurbish and possibly replace some of the equipment and that he wanted to sell the "Le-Roi Unit". He further testified that he told plaintiff how much it would cost to put the unit in shape again and that plaintiff "concurred that we should sell it." Other testimony was submitted concerning plaintiff's knowledge that the "Le-Roi Unit" would be sold and why it should be sold and conversations explaining the letters herein set forth.

After the "Le-Roi Unit" had been sold to defendant, plaintiff's attorneys wrote the following letter to mortgagor's attorneys:

"'Now something that is even more important than this, is the fact that we have not received any explanation for the sale of the chattel assets which are covered by his mortgage. We are specifically referring to the Gardner Denver Compressor, with a Le-Roi engine, which is missing from the property. This equipment cost when new, somewhere between $30,000.00 and $40,000.00. We are demanding that all of the proceeds from the sale of that equipment or the sum of $10,000.00 whichever is greater, be immediately applied upon the mortgage indebtedness. This is a very serious matter when mortgaged property is disposed of * * *.'"

In reply to this letter, mortgagor wrote to plaintiff that the "Le-Roi Unit" had been sold for $5,000.00 and this sum, and $17,000.00 of mortgagor's own funds, or a total of $22,000.00, had been used for the repair of an Ingersoll Rand Compressor, and in addition thereto, it had insulated the towers, installed small-line compressors, a new water cooling system and laid many thousands of feet of line to bring wet gas to the gasoline plant.

In response to this letter, plaintiff wrote to mortgagor the following:

"We should like to have the receipted bills showing the expenditure of $22,000.-00 on the Ingersoll Rand Compressor.

"We should like to have the execution of a mortgage covering the small line compressors, the water cooling system and the new pipe which you state, has been laid."

Although mortgagor did not furnish plaintiff with a description of the newly acquired property for inclusion in a "substitute agreement" as requested, such property and the refurbished machinery were redelivered to plaintiff and the property was sold at foreclosure.

In Universal Credit Co. v. Reily, 171 Okl. 286, 42 P.2d 516, we said:

"* * * In National Bond & Investment Co. v. Central National Bank of Enid, 142 Okl. 96, 285 P. 828, in the first paragraph of the syllabus, this court said: 'Where the mortgagee expressly or impliedly consents to a sale of the mortgaged property by the mortgagor, he waives his lien, and the purchaser takes the title free from the same; except where it is clear that the mortgagee intended that the property should be sold subject to the lien of the mortgage and the purchaser so understands,' and in the body of the opinion we find this language: 'It is perhaps a universal rule that a mortgagee by consenting to a sale of the mortgaged property by the mortgagor, the mortgagee surrenders his lien and looks to the mortgagor personally for the payment of his mortgage.'"

See also, Phelan v. Barnhart Bros. & Spindler, 75 Okl. 49, 181 P. 718; and Farmers' State Bank of Alva v. Kavanaugh & Shea, 98 Okl. 119, 224 P. 525.

In our opinion the evidence supports the finding of the trial court that "defendant bought the property from the mortgagor, free and clear of any mortgage lien of plaintiff".

Judgment affirmed.

All the Justices concur.