**In re TULSA INDUSTRIAL FACILITIES, INC., Debtor.**

**William E. RUTLEDGE, Trustee, Plaintiff,**

v.

**VERDIGRIS VALLEY ECONOMIC DEVELOPMENT CORPORATION, INC.; Washington County Industrial Authority; RCB Bank, formerly Rogers County Bank; and R.B. Manton, Inc. d/b/a Precision Tubulars, Defendants.**

**Bankruptcy No. 88–02522–C. Adv. No. 92–0016–C.**

United States Bankruptcy Court, N.D. Oklahoma.

Sept. 27, 1995.

518

Gentra Sorem and William Rutledge, Conner & Winters, Tulsa, OK, for plaintiff.

Stephen B. Riley and Christopher L. Coyle, Riggs, Abney, Neal, Turpen, Orbison & Lewis, Tulsa, OK, for defendants.

## MEMORANDUM OPINION

STEPHEN J. COVEY, Bankruptcy Judge.

This matter comes on for hearing upon the complaint of Plaintiff, William E. Rutledge, Trustee of the Estate of Tulsa Industrial Facilities, Inc. ("TIFI"), against Verdigris Valley Economic Development Corporation, Inc. ("Verdigris"). TIFI and Verdigris have competing secured claims to the collateral of Precision Tubulars, Inc. ("Precision"). A trial was conducted on July 26, 1995. At the conclusion of the trial, the Court took the matter under advisement.

1. Precision and R.B. Manton, Inc. d/b/a Precision Tubulars are one and the same entity.

2. This is an oversimplified explanation of the transaction. Street Tubular, Inc. ("STI") and Street Equipment Leasing Company ("SELC")

## STATEMENT OF FACTS

TIFI and Verdigris are both creditors of Precision. TIFI and Verdigris each claim a prior perfected security interest in various equipment, furniture, merchandise, and fixtures (the "Collateral") which was owned by Precision. The Collateral was located at a manufacturing facility leased by Precision at the Tulsa Industrial Facility, 3101 Charles Page Boulevard, Tulsa, Oklahoma (the "Premises").

TIFI's security interest was created as follows: TIFI entered into a Lease Agreement with Precision[1] covering the Premises on or about October 5, 1987 (the "Lease"). The Lease was secured by a security interest in the Collateral. Thereafter, on August 25, 1988, TIFI filed for protection under Chapter 11 of the Bankruptcy Code. In May 1989, TIFI perfected its security interest in the Collateral by filing the Lease with the Oklahoma County Clerk and the Tulsa County Clerk. TIFI's secured claim against Precision is in the amount of $285,083.09.

Verdigris' security interest is based on security documents which were assigned to Verdigris by E. Bruce Street, Sr., E. Bruce Street, Jr., and M. Boyd Street (collectively, the "Street Family"). R.B. Manton, Inc. ("Manton") purchased Precision from the Street Family in the summer of 1988.[2] On or about June 28, 1988, Manton executed a promissory note (the "Street Note") in the amount of $1,200,000.00 in favor of the Street Family. The Street Note was secured by security agreements ("Street Security Agreements") and perfected by filed financing statements ("Street Financing Statements"). The Street Note and the Street Security Agreements (collectively, the "Street Security Documents") cover the following:

All equipment, including all accessions, accessories, parts, tools, attachments, replacements, and substitutions now or hereafter installed upon, deposited in, or affixed or attached to Debtor's business premises consisting of [Premises] ...

acquired the assets of Precision by asset purchase and/or purchase of stock of Precision. R.B. Manton, Inc. actually purchased the stock of STI and SELC from the Street Family in the summer of 1988.

Significantly, the Street Security Agreements contained a future advance clause. In particular, the Street Security Agreements secured "a promissory note . . . and all other indebtedness and liabilities of all kinds of Debtor to Secured Party (whether created directly or acquired by Secured Party indirectly by assignment or otherwise, and whether now existing or hereafter arising, . . . due or to become due, primary or secondary, and all renewals and extensions thereof). . . . " The Security Agreements also contained a clause which stated that the "Secured Party may assign any part or all of the Obligations and this Security Agreement to an assignee who will be entitled to all of the rights, privileges, and remedies granted in this Agreement to Secured Party."

The Street Financing Statements were filed with the Oklahoma County Clerk on September 6, 1988 and recorded with the Tulsa County Clerk in September and October of 1988. Accordingly, the Street Family held a perfected security interest in the Street Collateral ("all equipment, parts, tools and attachments located at the Premises") as of September 6, 1988 and October 1988.

In early September 1989, Verdigris entered into a lending relationship with Precision. By August 1990, Verdigris had loaned Precision $4,921,319.49. These loans were secured by a security interest in the Collateral. Verdigris perfected its security interest by filing a series of financing statements with the Oklahoma County Clerk beginning on June 6, 1990, and with the Tulsa County Clerk on July 24, 1990.

During the summer of 1990, the Street Family, TIFI, and Verdigris each held perfected security interests in the Collateral. The Street Family held the first priority security interest. The Street Family Security Documents covered future advances by the Streets or their assignees. TIFI held the second priority security interest in the Collateral. Verdigris held the third priority security interest in the Collateral.

In August 1990, Precision and Verdigris agreed that Verdigris would pay the Street Note on behalf of Precision and the Street Family would assign the Street Security Documents to Verdigris (the "August 1990 Transaction"). In the August 1990 Transaction, the Street Family and Manton signed a Mutual Release and Termination Agreement ("Release"). The Release canceled the debt of Precision to the Street Family but provided that "[t]he Security Documents will remain in full force and effect." Also, in the August 1990 Transaction, the Street Family assigned the Street Security Documents to Verdigris. In addition, as part of the transaction, Verdigris paid $500,000.00 to the Street Family in full payment of the Precision debt. The note between the Street Family and Precision was marked "paid." No new note was executed by Precision to Verdigris. After the assignment of the Street Family Security Documents to Verdigris, Verdigris advanced $2,513,015.71 to Precision.

## ISSUE

The issue before the Court is whether Verdigris or TIFI has the first priority security interest in the Collateral. The Collateral has an estimated value of $650,000.00. Precision's indebtedness to TIFI is $285,083.09. Precision's indebtedness to Verdigris consists of $4,921,319.49 advanced before the assignment of the Street Security Documents and $2,513,015.71 advanced after the assignment for a total debt of $7,434,335.20. TIFI contends that when the note between Precision and the Street Family was canceled as part of the August 1990 Transaction, the Street Security Documents were forever terminated and no longer have validity or effect. TIFI therefore asserts that it holds the first priority security interest in the Collateral. Verdigris contends that its advances to Precision in the amount of $2,513,015.71 are secured by the Collateral and are prior to TIFI's security interest as a result of the assignment of the Street Security Documents to Verdigris during the August 1990 Transaction.

## DISCUSSION

■ A security interest is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." 12A O.S.1993, § 1–201(37). A security interest does not necessarily reflect a static relationship between the debtor and

the secured party. The amount of the collateral subject to the security agreement and the amount of the indebtedness may vary. *Texas Kenworth Co. v. First Nat'l Bank of Bethany*, 564 P.2d 222, 224 (Okla.1977).

■ Oklahoma courts have held that a security interest is terminated when the underlying obligation is extinguished. In *Poteau State Bank v. Denwalt*, the Supreme Court of Oklahoma stated that "[i]f the underlying obligation ceases to exist, so does the interest securing it." *Poteau State Bank v. Denwalt*, 597 P.2d 756, 761–62 (Okla.1979) (footnote omitted); *see also Riverside Nat'l Bank v. Manolakis*, 613 P.2d 438, 441 (Okla.1980); *Texas Kenworth Co. v. First Nat'l Bank of Bethany*, 564 P.2d 222, 227 (Okla.1977); *Cook v. Bingman*, 198 Okla. 421, 422, 179 P.2d 470, 472 (1947). The Court finds that the execution of the Release by the Street Family and Manton during the August 1990 Transaction extinguished the underlying obligation, Precision's debt to the Street Family. Notwithstanding the Release and discharge of the underlying obligation, the Street Security Documents survived the August 1990 Transaction and remain valid. There was no cancellation or termination of the Street Security Documents or of the filed financing statements.

■ The Street Security Documents assigned to Verdigris also contain a future advance clause. The Uniform Commercial Code contemplates the use of future advance clauses in security agreements. The Uniform Commercial Code, as adopted by Oklahoma, provides in pertinent part as follows:

§ 9–204. After–Acquired Property; Future Advances

(3) Obligations covered by a security agreement may include future advances[.]

12A O.S. 9–204(3).

Oklahoma courts have also recognized the validity of future advance clauses in security agreements. In *Security Nat'l Bank and Trust Co. v. Dentsply Professional Plan*, the Supreme Court of Oklahoma stated that "[w]hen the security agreement clearly indicates that the debtor's obligation includes future advances, the collateral pledged will stand as security for future advances." *Security Nat'l Bank and Trust Co. v. Dentsply Professional Plan*, 617 P.2d 1340, 1345 (Okla.

1980). Also, in *Texas Kenworth Co. v. First Nat'l Bank of Bethany*, the Court, in discussing future advance clauses, stated that "there must be a clause in the security agreement which clearly provides for future advances. Absent such a clause, future advances would not be 'covered.' " *Texas Kenworth Co. v. First Nat'l Bank of Bethany*, 564 P.2d 222, 225 (Okla.1977).

The Street Security Agreements clearly provide for future advances. The Street Security Documents were assigned to Verdigris. As a result, Verdigris stands in the Street Family's stead, and enjoys all of the Street Family's rights. Accordingly, when Verdigris made advances to Precision in an amount in excess of $2,513,015.71 after the assignment, Verdigris' security interest gained priority over TIFI's because the Street Security Documents were filed prior to TIFI's perfection of the Lease. *See In re Robert B. Lee Enterprises*, 980 F.2d 606, 608–09 (9th Cir.1992); *In re Gilchrist Co.*, 403 F.Supp. 197, 201 (E.D.Pa.1975), *aff'd*, 535 F.2d 1246 (3d Cir.1976); *In re Cara Corp.*, 148 B.R. 779, 782 (Bankr.E.D.Pa.1992); *In re McLaughlin Farms, Inc.*, 120 B.R. 493, 506 (Bankr.N.D.Iowa 1990); *In re Cycle Products Distributing Co.*, 118 B.R. 643, 645 (Bankr.S.D.Ill.1990).

To analyze this issue another way, if the Streets had retained the security agreements and made future advances to Precision, the future advances would be covered by the future advance clause of the security agreements and would have priority over TIFI's security interest. When TIFI perfected its security interest, it had notice of the Street Family security interest and notice of the fact that the Street Security Documents covered future advances. Future advances were made, not by the Street Family, but by its assignee, Verdigris. Thus, the Court finds that the future advances made by Verdigris have priority over TIFI's security interest in the Collateral.

A Judgment Order consistent with this Memorandum Opinion will be entered.

**IT IS SO ORDERED.**