961 P.2d 194 (1998)
1998 OK 46
FIRST BANK OF OKARCHE, Plaintiff/Respondent,
v.
David J. LEPAK, Rob Fisher and Bob Fisher d/b/a Farmers Commission Company, Mikkelson Beef, Inc.; Perkins "Y" Livestock Auction, Inc.; First Bank & Trust Company, Defendants/Petitioners.
No. 89654.
Supreme Court of Oklahoma.
June 2, 1998.
Robert T. Luttrell, III, Oklahoma City, For Defendant/Petitioner Mikkelson Beef, Inc.
Drew L. Kershen, Norman, George W. Dahnke, Michael E. Chionopoulos, Abowitz, Rhodes & Dahnke, P.C., Oklahoma City, E. Lawrence Oldfield, E. Lawrence Oldfield & Associates, Oak Brook, IL, For Defendant/Petitioner Rob Fisher.
Douglas L. Jackson, Julia C. Rieman, Gungoll, Jackson, Collins & Box, P.C., Enid, For Plaintiff/Respondent First Bank of Okarche.
Thomas G. Ferguson, Jr., Walker, Ferguson & Ferguson, Oklahoma City, Ernest H. Van Hooser, Van Hooser, Olsen & Eftink, P.C., Raymore, MO., For Amici Curiae Livestock Marketing Association et al.
Charles E. Cheatham, Oklahoma City, For Amicus Curiae Oklahoma Bankers Association.
*195 HARGRAVE, Justice.
¶ 1 We granted certiorari to review an interlocutory order certified by the trial judge requesting immediate review pursuant to 12 O.S.1991 § 952(b)(3). Two issues are presented: 1) whether the federal Food Security Act, 7 U.S.C. § 1631, which changed the farm products rule, preempted state common law defenses to conversion in cases arising under it, and 2) whether the trial court erred in determining as a matter of law that 12A O.S.1991 § 9-307.1 et seq., enacted in compliance with the federal Food Security Act, is a strict liability statute that prevents raising common law defenses in a conversion action by a lender against a purchaser of farm products in the ordinary course of business. The trial judge granted partial summary judgments against defendants Rob Fisher and Bob Fisher d/b/a/ Farmers Commission Company and Mikkelson Beef, Inc. in favor of First Bank of Okarche, ruling that as a matter of law Title 12A O.S. § 9-307.1 et seq. is a strict liability statute that prevents any common law defenses from being raised, specifically the defense of waiver through implied authorization under 12A O.S. § 9-306(2).
¶ 2 We find that the federal Food Security Act did not preempt the common law *196 defenses and that Oklahoma's § 9-307.1 et seq. is not a strict liability statute. Conversion would not lie unless the transfer by the debtor was not authorized by the lender. It is for the trier of fact to determine whether the facts establish that the disposition of collateral in the case at bar was authorized by the secured party.

FACTS
¶ 3 First Bank of Okarche ("FBO") held a security interest in cattle owned by David J. Lepak based upon a promissory note in the amount of $494,000 executed on December 6, 1995. FBO's security interest was perfected by filing in Lincoln County, Oklahoma and by filing an Effective Financing Statement with the Secretary of State pursuant to 12A O.S.1991 § 9-307.6. Lepak had sold the cattle that were the subject of the security interest and defaulted on his obligations to the plaintiff.
¶ 4 FBO brought suit in Canadian county against Lepak, Rob Fisher and Bob Fisher d/b/a Farmers Commission Company ("Fisher"), First Bank & Trust Company of Luther, Mikkelson Beef, Inc. ("Mikkelson") and Perkins "Y" Livestock Auction, Inc. FBO sued Fisher for conversion, claiming that Fisher had purchased cattle from Lepak subject to and with knowledge of FBO's perfected security interest, but had failed to make FBO a joint payee on the checks to Lepak. Mikkelson was sued for conversion for purchasing cattle from Lepak without naming FBO as joint payee on the checks issued to Lepak for purchase of the cattle.
¶ 5 FBO moved for summary judgment on its conversion claim against Fisher, alleging that in the two years preceding the date the action was filed Fisher issued checks to Lepak or to Lepak jointly with the First Bank & Trust Co. of Luther, Oklahoma, in the amount of $116,295.11 for cattle sold through Fisher d/b/a Farmers Commission Company. FBO alleged that Fisher subscribed to the Central Filing System and was aware of FBO's security interest in David Lepak's cattle, but did not obtain a release or waiver from FBO. Fisher's answer raised the affirmative defenses of waiver, consent to sale, causation, estoppel and reckless lending practices by plaintiff. Fisher admitted knowing that two banks, FBO and First Bank & Trust Co. of Luther, held security interests in Lepak's cattle, but argued that FBO knew of sales made to Fisher and also knew that the proceeds were not delivered to FBO in every instance.
¶ 6 FBO moved for summary judgment on its conversion claim against Mikkelson Beef, alleging that in the two years preceding filing of the action Mikkelson made cattle purchases from Lepak and issued checks in the amount of $14,664.40 to Lepak. Mikkelson was not registered with the Secretary of State as a purchaser of farm products under the central filing system. Mikkelson did not obtain a release of FBO's security interest in the cattle. Mikkelson raised the defenses of estoppel, waiver and reckless lending practices on the part of FBO.
¶ 7 The trial judge granted FBO partial summary judgments against Rob Fisher d/b/a/ Farmers Commission Company and against Mikkelson Beef, Inc. The trial judge concluded as a matter of law that: 12A O.S. § 9-307.1 et seq. is a strict liability statute; that all common law defenses, including waiver and estoppel, arising from a course of performance or a course of conduct between a lender and a debtor are no longer available to a purchaser of farm products in the ordinary course of business from a person engaged in farming operations following enactment of § 9-307.4 and the Food Security Act; and that specifically the defenses of waiver through implied authorization under 12A O.S. § 9-306(2), and estoppel through implied authorization of sale or course of conduct, are no longer available as affirmative defenses to a purchaser of farm products in the ordinary course of business because these defenses were eliminated by § 9-307.1 et seq. and the Food Security Act. The trial judge concluded that because of the strict liability, there was no genuine, material issue of fact with regard to the cause of plaintiff's damages or the amount thereof. Therefore, the judge did not make a determination whether such defenses created a fact issue.

DISCUSSION
¶ 8 The federal Food Security Act was enacted to correct a perceived unfairness in *197 the way the farm products rule applied to buyers of farm products in the ordinary course of business. Under UCC § 9-307(1), a buyer in the ordinary course of business takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence. Excepted from § 9-307, however, were persons buying farm products from a person engaged in farming operations. Unless the secured creditor authorized the sale, buyers of farm products did not take free of the security interest. This exception was referred to as the farm products rule. Under the farm products rule, buyers of farm products, unlike other buyers in the ordinary course of business, could end up paying twice for their purchases. The secured party would sue the purchaser for conversion when the debtor sold farm products without paying the secured lender. Because these buyers were denied the same protections afforded other buyers in the ordinary course of business, the rule was criticized and many states enacted laws designed to protect against the rule's harshness. See, Bodine, Clear Title: A Buyer's Bonus, A Lender's LossRepeal of UCC 9-307(1), 26 Washburn L.Jour. 71 (1986); See also, discussion in Food Services of America v. Royal Heights, 123 Wash.2d 779, 871 P.2d 590 (1994), and McCubbins, Farm Products Lending and Oklahoma's New Article IXA Practical Analysis, 13 OCU L.Rev. 297 (1988).
¶ 9 Ultimately, Congress passed the Food Security Act of 1985 in order to change the farm products rule. The Act preempted state law on the farm products exception to the extent necessary to achieve the goals of the legislation. It did not preempt basic state law concerning the creation, perfection or priority of security interests. Congress believed that the farm products rule constituted a burden on interstate commerce, and declared that the Act's purpose was to remove that burden. H.R.Rep. No. 271, pt. 1, 99th Cong. 1st Sess. 110 (1985), reprinted in U.S.C.C.A.N. 1103, 1214. See discussion in Food Services of America v. Royal Heights, supra.
¶ 10 The Oklahoma legislature enacted Title 12A O.S. § 9-307.1 et seq. in compliance with the Food Security Act of 1985. Section 9-307.1 states that the purpose of the Act is to make the laws governing protection of buyers of farm products, commission merchants and selling agents[1] comply with the provisions of Section 1324 of the Food Security Act of 1985 as codified at Section 1631 of Title 7 of the United States Code. The Oklahoma Act created a central filing system for financing statements covering farm products that requires all parties holding security interest in farm products to file notice with the Secretary of State.
¶ 11 Buyers of farm products registered with the Secretary of State will receive a list of secured lenders dealing with the particular farm products that those buyers are registered to purchase. A farm product is defined as an agricultural commodity such as wheat, corn, soybeans, or a species of livestock such as cattle, hogs, sheep, horses, or poultry used or produced in farming operations, or a product of such crop or livestock in its un-manufactured state (such as ginned cotton, wool-clip, maple syrup, milk, and eggs), that is in the possession of a person engaged in farming operations. § 9-307.2(e).
¶ 12 The particular section of the Oklahoma Act involved in the case at bar is § 9-307.4, entitled "Protection of Buyers of Farm Products, Commission Merchants and Selling Agents." Section 9-307.4 specifies the instances where a buyer of farm products will take subject to a security interest:[2]

*198 (a) the buyer has failed to register with the Secretary of State prior to the purchase of the farm products and the secured party has filed an effective financing statement that covers the farm products being sold; or,
(b) the buyer receives from the Secretary of State written notice as provided in § 9-307.6(4)(d) or (f) and the buyer does not secure a waiver or release of the security interest ...; or
c) the secured party or the seller provides written notice of the security interest pursuant to § 9-307.7.
¶ 13 The trial judge strictly interpreted the above statute to mean that if the buyer fails to register with the Secretary of State and an effective financing statement is on file, or if the buyer has knowledge of the security interest and does not secure a waiver or release, the buyer takes subject to the security interest, and allegations of waiver, implied waver, acceptance, or reckless lending practices could not be raised as defenses. The trial judge held that the foregoing section created strict liability under its provisions and destroyed the defense of actual or implied authorization for disposition of the collateral by the secured party provided in § 9-306(2). Title 12A O.S.Supp.1996 § 9-306(2) provides:
"Except where this article otherwise provides, a security interest continues in collateral, notwithstanding sale, exchange or other disposition thereof, unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor." (emphasis added).
The effect of § 9-306(2) is that the secured party destroys its security interest by authorizing disposition of the collateral. Thus, section 9-307 only came into play where disposition of the collateral had not been authorized by the secured party. See, UCC Comment 2 to 12A O.S.A.Supp. § 9-307, Protection of Buyers of Goods, which provides in pertinent part:
"The limitations which this Section imposes on the persons who may take free of a security interest apply of course only to unauthorized sales by the debtor. If the secured party has authorized the sale in the security agreement or otherwise, the buyer takes free without regard to the limitations of this Section. Section 9-306 states the right of a secured party to the proceeds of a sale, authorized or unauthorized."
¶ 14 If the secured party has authorized disposition of the collateral, one of the basic elements of the tort of conversion has not been met. In Rose Brothers, Inc. v. City of Alva, 356 P.2d 1083 (Okla.1960), we said that in order to constitute conversion, non-consent to the possession and disposition of the property is indispensable. If the owner expressly or impliedly assented to or ratified the taking, use, or disposition of his property, he could not recover for conversion of the property. Black's Law Dictionary defines conversion as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights.
¶ 15 The common law supplements the UCC in Oklahoma unless a particular section provides that it does not. Title 12A O.S.1991 § 1-103 provides:

*199 "Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."
¶ 16 The defenses of waiver and estoppel have been available to buyers of livestock who could show that the lender acquiesced in selling practices that might impair its security interest. See, for example, First National Bank & Trust Co. of Oklahoma City v. Iowa Beef Processors, Inc., 626 F.2d 764 (10th Cir.1980), Neu Cheese Co. v. F.D.I.C., 825 F.2d 1270 (8th Cir.1987); National Livestock Credit Corp. v. Schultz, 653 P.2d 1243 (Okla.App.1982); Farmers State Bank v. Farmland Foods, Inc., 225 Neb. 1, 402 N.W.2d 277 (1987), and Oklahoma case law has permitted raising common law defenses in various matters governed by the UCC. See, First State Bank v. Diamond Plastics, Inc., 891 P.2d 1262 (Okla.1995); Poteau State Bank v. Denwalt, 597 P.2d 756 (Okla.1979), W.R. Grimshaw Co. v. First National Bank & Trust Co., 563 P.2d 117 (Okla.1977), and Central National Bank & Trust Co. of Enid v. Community Bank & Trust Co. of Enid, 528 P.2d 710 (Okla.1974).
¶ 17 In Poteau State Bank v. Denwalt, 597 P.2d 756 (Okla.1979), which did not involve farm products, we held that Denwalt was precluded from asserting that she did not personally authorize the sale of the collateral, stating:
"Under certain conditions, words or conduct of a party may operate to estop him from exacting literal compliance with contract terms. If a party represents or leads one to believe that he will not insist upon literal performance of a contract term, and the other party detrimentally relies thereon, the first party will be held estopped from demanding literal compliance. This much is elementary in law governing estoppel in pais."
¶ 18 Likewise, we have upheld applying common law principles in letters of credit practice. In First State Bank v. Diamond Plastics, Inc., 891 P.2d 1262 (Okla.1995), we said that although Article 5 of the UCC did not specifically provide for estoppel in letter of credit practice, those rules of law were not prohibited from it. Section 5-102 stated that the article dealt with some but not all of the rules and concepts of letters of credit developed prior to the Act, or that may develop after it. We said:
"Therefore, common law doctrines such as estoppel may be applied to cases involving letters of credit, and many courts have utilized estoppel in determining how to resolve issues in wrongful dishonor cases."
¶ 19 We find nothing in Oklahoma's enactment of § 9-307.1 et. seq. indicating an intention to supplant the common law, nor any indication that it was intended as a strict liability statute. When the legislature amended § 9-306, it did not change § 9-306(2), nor did it state in § 9.307.1 et seq. that § 9-306(2) would not apply. Unauthorized disposition is one of the elements of conversion. We find that § 9-307.1 et seq., like § 9-307, comes into play only where there has been an unauthorized disposition of collateral. We cannot find, by implication, that the legislature intended to exclude the defense that disposition of the collateral was authorized by the secured party.
¶ 20 Regarding federal preemption, FBO argues that enactment of the federal Food Security Act and, ultimately, § 9-307.1 et seq., not only preempted the farm products rule, but also preempted § 9-306(2). Because § 9-307.4 is the more recent enactment and is a specific statute designed to deal with a specific situation, it should take precedence, FBO contends, and control over the general provisions of § 9-306(2). Because the Food Security Act preempted the farm products exception, which was itself an exception to § 9-306(2), they argue that § 9-306(2) must have been preempted also. The goals of the Food Security Act would be defeated, they say, by retaining the conflicting case law authority under § 9-306(2), which was part and parcel of the farm products exception as it existed prior to enactment of the Food Security Act.
¶ 21 The defendants argue that the Food Security Act did not preempt the common *200 law defenses because there was no intent expressed in the Act to do so. They argue that the defense of waiver, as with all equitable doctrines, is incorporated into every transaction under the UCC, and survived passage of the Food Security Act. They state that the body of common law existing outside of the Uniform Commercial Code is incorporated into it unless explicitly displaced by a particular provision, citing 12A O.S. § 1-103 and Poteau State Bank v. Denwalt, 597 P.2d 756 (Okla.1979). They point out that this Court consistently has applied principles of equity to resolve issues involving all articles of the UCC, citing Central National Bank and Tr. Co. of Enid v. Community Bank & Trust Co. of Enid, 528 P.2d 710 (Okla.1974) and W.R. Grimshaw Co. v. First National Bank & Trust Co., 563 P.2d 117 (Okla.1977). Congress, they argue, did not intend to curtail the common law defenses when enacting the Food Security Act because the stated purpose of the Act was to protect livestock commission agents and buyers from having to pay twice for the farm products purchased.
¶ 22 Federal preemption is a matter of Congressional intent that occurs in four instances: 1) where there is express statutory language; 2) where there is a pervasive regulatory scheme that implies by its presence that Congress felt that the federal regulation did not need supplemental state law provisions; 3) where there is an actual conflict between state and federal laws making it physically impossible to comply with both; or 4) where the objectives and purposes of Congress are thwarted by state law. Todd v. Frank's Tong Service, Inc., 784 P.2d 47, 49 (Okla.1989). A presumption of preemption is present only in situations where there is a conspicuous federal intent to exclude the questioned state law. Id. In these instances, the presumption must be supported by express statutory language or a clear legislative history before Congress can be attributed with an intention to preempt the state action. Id.
¶ 23 Using the Todd test, it is clear that the Food Security Act did not preempt state common law defenses to conversion. There is no express language in the Act that does so; there is no conflict between the federal Act and state common law making it impossible to comply with both; the federal objectives are not thwarted by applying the common law, and in fact they enhance Congress' stated purpose. Finally, the Food Security Act specifically stated that it did not intend to preempt state law provisions governing creation, perfection or priority of security interests.
¶ 24 Allowing the common law defenses to conversion does not cause conflict with the federal regulation nor does it detract from the objectives of the federal regulatory scheme. Rather, allowing the common law defenses appears to further the purpose of Congress in its enactment of the Food Security Act. While Congress felt a need to address the farm products rule, it clearly did not intend that the federal legislation in this area be so pervasive as to presumptively preclude state common law that would promote the same general purposes and objectives.
¶ 25 We find no expressed Congressional intent to preempt common law defenses in enacting the Food Security Act. The federal Act was clearly concerned with removing the burden from the buyer of farm products in the ordinary course of business. Removing the buyer's access to common law defenses, in the absence of language indicating legislative intent to do so, does not accomplish that goal. The test for preemption has not been met.
¶ 26 We have found little case law from other states on the preemption issue involved here. A case dealing with virtually identical facts is Mercantile Bank of Springfield v. Joplin Regional Stockyards, Inc., 870 F.Supp. 278 (W.D.Mo.1994), which held that the federal Food Security Act did not preempt Missouri law allowing the common law defenses of waiver and estoppel to be raised in an action by the secured party to recover from a buyer of cattle. The secured party sued under the Food Security Act for the reasonable market value of the collateral sold. The secured party notified the buyer in writing of its security interest in the collateral under the Act, and instructed the buyer that it could protect itself from being subject *201 to the bank's security interest by listing the Bank and the debtors as joint payees on checks remitted to debtors. The buyer failed to list the bank as a joint payee.
¶ 27 The buyer in the Mercantile case argued that bank had waived its security interest by consenting to the sales, so that the Food Security Act had no bearing on the case. The secured party contended that state law waiver concepts were inapplicable in cases involving the Food Security Act because the state and federal laws are contradictory and incompatible. The court found that the Food Security Act did not preempt state common law regarding waiver. The court used a three-pronged test for preemption and found that it was not met where: 1) the Act did not explicitly preempt state law; 2) the drafters stated their intent that the legislation would not preempt the entire area of secured interests in farm products, and 3) the state and federal laws were not conflicting and incompatible. The court noted that while the buyer ordinarily would have been subject to the Bank's security interest by having conceded receipt of proper notice, the Bank waived its interest by not protesting the sale of the collateral without written consent as required by the security agreement.
¶ 28 The Mercantile court pointed out that allowing the defense of waiver of the lender's security interest in no way nullifies the purpose of the Food Security Act. Congress clearly stated that the Act was written to protect the purchaser of farm products and to shift the burden to the lender. The court found that no source of law indicated that the secured party's security interest was absolute and could not be waived by the secured party. Any injury the secured party may experience from waiver, they stated, is self-imposed and does not arise out of misapplication of the law.
¶ 29 We agree with the rationale of the Mercantile court. FBO attempts to discredit the Mercantile decision by pointing out that Missouri does not have a central filing system. The preemption analysis conducted by the Mercantile court, however, does not depend on the particular filing system adopted by an individual state and the Food Security Act does not itself require that a state adopt a central filing system.

CONCLUSION
¶ 30 The Food Security Act was enacted for the stated purpose of protecting buyers of agriculture products in the ordinary course of business. The Oklahoma legislature enacted 12A O.S. § 9-307.1 et. seq. in compliance with the federal Act. Oklahoma law allows these defenses and nothing in the Oklahoma Act states that common law remedies will not apply. Title 12A O.S. § 1-103 says that the Uniform Commercial Code shall not displace common law principles and that these elements will supplement its provisions. We have examined the test for federal preemption and have found that the state common law defenses were not preempted. Accordingly we find that the trial judge erred in ruling as a matter of law that these defenses could not be raised.
¶ 31 It is disputed in the case at bar whether the lender authorized sale of the collateral by its actions. Because the trial judge made no finding regarding the factual disputes, the cause is remanded for further proceedings in accordance with this opinion. The stay imposed by our order of September 16, 1997 is hereby ordered dissolved.
THE TRIAL COURT'S JUDGMENT IS REVERSED; THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS.
¶ 32 KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER, HARGRAVE, OPALA, ALMA WILSON and WATT, JJ., concur.
¶ 33 SIMMS, J., not voting.
NOTES
[1] The term "buyer" used in this opinion includes commission merchants and selling agents.
[2] The counterpart in the Food Security Act is 7 U.S.C. § 1631(d) and (e), which provides, in pertinent part:

(d) Purchases free of security interest
Except as provide in subsection (e) of this section and notwithstanding any other provision of Federal, State, or local law, a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected and the buyer knows of the existence of such interest. (emphasis added) (e) Purchases subject to security interest
A buyer of farm products takes subject to a security interest created by the seller if
(1)(A) within 1 year before the sale of the farm products, the buyer has received from the secured party or the seller written notice of the security interest organized according to farm products ...
(2) in the case of a farm product produced in a State that has established a central filing system
(A) the buyer has failed to register with the Secretary of State of such State prior to the purchase of farm products, and
(B) the secured party has filed an effective financing statement or notice that covers the farm products being sold, or
(3) in the case of a farm product produced in a State that has established a central filing system, the buyer
(A) receives from the Secretary of State of such state written notice as provided ... and
(B) does not secure a waiver or release of the security interest specified in such effective financing statement or notice from the secured party by performing any payment obligation or otherwise.