[No. 60638-2.    En Banc.    April 14, 1994.]

FOOD SERVICES OF AMERICA, *Respondent*, v. ROYAL HEIGHTS, INC., *Defendant*, ZIRKLE FRUIT COMPANY, *Petitioner*.

*Meyer, Fluegge & Tenney, P.S., Walter G. Meyer,* and *Jerome R. Aiken,* for petitioner.

*Bogle & Gates* and *James A. Perkins*, for respondent.

ANDERSEN, C.J. —

FACTS OF CASE

This case involves the statutory construction of the Federal Food Security Act of 1985 and its effect on the priority given to security interests in farm products.

Royal Heights, Inc. (Royal) owns and operates a fruit orchard in Grant County, Washington, on which it grows apples and cherries. Food Services of America (d.b.a. Amerifresh) is a commission merchant doing business in that region. A commission merchant is one who is engaged in the business of receiving farm products for sale, on commission, or for or on behalf of another person.[1]

In 1988, Royal agreed to deliver its 1988 cherry and apple crops to Amerifresh for Amerifresh to process and sell. Amerifresh loaned Royal in excess of $100,000 and obtained a perfected security interest in Royal's crops as collateral for the loan. The financing statement for that security interest was filed on May 16, 1988. The parties dispute what part of those loan proceeds was used to produce the apple portion of Royal's 1988 crop.

Royal delivered its 1988 cherry crop to Amerifresh. Whether the proceeds from the sale of the cherry crop were sufficient to fully repay the loan to Amerifresh is apparently disputed as well. Despite its contract to deliver its 1988 apple crop to Amerifresh, Royal later delivered that crop to another commission merchant, Zirkle Fruit Company, for processing and sale. Amerifresh orally informed Zirkle that it had a perfected security interest in Royal's apple crop. Amerifresh concedes that Zirkle is a commission merchant and that Amerifresh did not give written notice of its lien to Zirkle.

In the fall of 1988, Zirkle loaned $100,000 to Royal, and in January of 1989 filed a financing statement with the

---

[1] 7 U.S.C. § 1631(c)(3).

Secretary of State purporting to secure[2] an interest in Royal's 1988 apple crop. Zirkle then sold the apple crop and applied the proceeds to its own loan. Apparently, none of the net proceeds of the apple crop were paid to Royal or to Amerifresh. Zirkle concedes that Amerifresh had a perfected security interest in the crops which was filed prior to Zirkle's security interest.

Amerifresh contends that Royal failed to repay all of the original loan amount to it. Amerifresh sued Royal and later added Zirkle as a party defendant. Both Amerifresh and Zirkle moved for summary judgment. The trial court granted Zirkle's motion and dismissed all of Amerifresh's claims against Zirkle with prejudice. The trial court based its decision on the Federal Food Security Act of 1985, 7 U.S.C. § 1631 (hereafter Food Security Act of 1985 or Act).

The Court of Appeals reversed the summary judgment and remanded for trial. *Food Servs. of Am. v. Royal Heights, Inc.*, 69 Wn. App. 784, 850 P.2d 585, *review granted*, 122 Wn.2d 1015 (1993). The Court of Appeals reasoned that Zirkle's legal relationship with Royal was twofold; Zirkle was both a commission merchant and a junior lienholder. The court reasoned that the Federal Act did not provide Zirkle, in its capacity as a lender, with priority over a prior perfected lienholder. The case was remanded for trial to determine factual issues in order to decide which creditor had priority under Washington law. We granted Zirkle's petition for review.

To understand the effect of the federal law and the Uniform Commercial Code (UCC) priorities, it is necessary to designate the relationship of each of the parties to one another and to the crops. Rather than using the names of the parties, therefore, the parties identified above will for clarity henceforth be referred to by their status in this case. Royal will be referred to as farmer/debtor, Food Services of America (d.b.a. Amerifresh) will be referred to as the first

---

[2]There is alleged to be an issue of fact whether a proper security agreement was executed between Royal and Zirkle or whether the financing statement suffices as an adequate agreement. That issue is not before this court.

lender,[3] and Zirkle will be referred to as the commission merchant/second lender.

Although the first lender did seek partial summary judgment at the trial level, it is not seeking summary judgment in this court.

## ISSUE

Under the Federal Food Security Act of 1985, 7 U.S.C. § 1631, does a commission merchant, who also acts as a secured lender, take its security interest free of a prior perfected security interest in the same collateral?

## DECISION

CONCLUSION. The Food Security Act of 1985 does not preempt basic state law rules on the creation, perfection or priority of security interests in farm products. A commission merchant who acts as a secured lender must look to state law to determine the priority of its security interest.

■ The first lender's action was dismissed by the trial court on a motion for summary judgment. The appellate courts, therefore, will engage in the same inquiry as the trial court.[4]

The resolution of this case lies in the construction of the Federal Food Security Act of 1985. The relevant portion of that Act essentially provides (with certain exceptions) that a buyer in the ordinary course of business who buys farm products takes free of a security interest created by the seller, and a commission merchant or selling agent is not "subject to" such a security interest.

The commission merchant/second lender argues that commission merchants always take free of prior security interests absent written notice of those interests. The trial court appears to have agreed with the argument that the

---

[3]Amerifresh is at times also a commission merchant. However, with respect to the apple crop, it was not a commission merchant, but instead held a security interest in the apple crop. The cherry crop, for which Amerifresh did serve as commission merchant, is not at issue in this case.

[4]*Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Our Lady of Lourdes Hosp. v. Franklin Cy.*, 120 Wn.2d 439, 443, 842 P.2d 956 (1993).

Federal Act is clear on its face[5] and therefore that a commission merchant does not take subject to a prior security interest even when the commission merchant also acts as a lender. The Act essentially provides that

> a commission merchant . . . who sells . . . a farm product . . .
> shall not be subject to a security interest created by the seller
> in such farm product . . .

7 U.S.C. § 1631(g)(1). We find this ambiguous under the facts before us. The statute speaks of a commission merchant "who sells"; it does not mention lending. This raises the issue whether the drafters of the Act intended to allow a *lender* (who is also a commission merchant) to take free of a prior perfected security interest. Additionally, according to the Act, "commission merchant" means "any person engaged in the business of receiving any farm product *for sale*, on commission, or for or on behalf of another person." 7 U.S.C. § 1631(c)(3). This definition envisions a commission merchant as a seller and not as a lender. In this case, the commission merchant/second lender was not acting as a commission merchant when it retained all of the net proceeds from the sale of the crop. Instead, it was acting as a secured junior lienholder.

■ "A court interprets a statute so as to give effect to the Legislature's intent in creating the statute. If the statute is unambiguous, its meaning is to be derived from the language of the statute alone. If, however, the intent of the statute is not clear from the language of the statute by itself, the court may resort to statutory construction. Such construction may include the consideration of legislative history." (Citations omitted.) *Cherry v. Municipality of Metro*

---

[5]In fact it appears that most of the commentators think the Food Security Act of 1985 is very unclear. Commentators have severely criticized the Federal Act for its failure to adhere to normal universally accepted UCC definitions and for being internally inconsistent and ambiguous. *See, e.g.,* Keith Meyer, *A Potpourri of Agricultural U.C.C. Issues: Attachment, Real Estate-Growing Crops and Federalization,* 12 Hamline L. Rev. 741, 767 (1989); *see also* Mark V. Bodine, Note, *Clear Title: A Buyer's Bonus, A Lender's Loss —Repeal of UCC § 9-307(1) Farm Products Exception by Food Security Act § 1324 [7 U.S.C. § 1631],* 26 Washburn L.J. 71, 80 (1986); Eldon H. Reiley, *State Law Responses to the Federal Food Security Act,* 20 UCC L.J. 260, 284 (1988).

*Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991). Since there is a significant ambiguity in the law, it is appropriate to look to the legislative history to determine intent.

In order to understand the Food Security Act of 1985, it is necessary to ask what that Act was seeking to accomplish. The federal law was enacted in order to change a UCC article 9 rule commonly known as the farm products rule.

The farm products rule is contained in an exception to one of the provisions of article 9. To understand the effect of the farm products rule, two provisions of article 9 must be considered, RCW 62A.9-306(2) and RCW 62A.9-307(1).

RCW 62A.9-306(2) provides:

> *Except where this Article otherwise provides*, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

(Italics ours.)

RCW 62A.9-307(1) provides:

> A buyer in ordinary course of business (subsection (9) of RCW 62A.1-201) *other than a person buying farm products from a person engaged in farming operations* takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

(Italics ours.)

Therefore, article 9 provides that unless the secured creditor authorizes the debtor to sell the collateral, the security interest continues in the collateral after the sale and also continues in the proceeds of the transfer.[6] In spite of this general rule, for most kinds of property, a "buyer in ordinary course of business" takes the collateral free of any security interest created by its seller.[7] However, article 9 creates an exception to that for the buyer of farm products.[8]

---

[6]RCW 62A.9-306(2).

[7]RCW 62A.9-307(1).

[8]RCW 62A.9-307(1).

Under the uniform version of the UCC, buyers of farm products did *not* take free of the security interest (unless the creditor had authorized the sale).[9] This result is commonly referred to as the farm products rule.

Under the farm products rule, the secured lender (who did not authorize the sale) could successfully sue the buyer in conversion when the farmer/debtor sold farm products and did not repay the lender. Consequently, if the farmer/debtor defaulted on the secured loan, the buyer might be forced to pay twice, once on purchase and again to the secured lender to wipe out the security interest attached to the purchased goods. In many states, commission merchants (and auctioneers and selling agents) were also liable in this situation.[10] The result of the farm products rule was that the buyers of farm products (and merchants and selling agents) were denied the protections ordinarily afforded to buyers in the ordinary course of business.[11] Commission merchants were caught in the middle and, like buyers, could end up paying twice, once to the farmer and again to the lender who sued them for conversion.

The effect of this rule, which forced buyers and various kinds of selling agents to pay twice for farm products, was generally perceived as unfair. There was wide criticism of the farm products rule and many states enacted laws to protect against the results of the rule. Much confusion was caused by the many nonuniform amendments to the article 9 rule by the different states.[12]

---

[9]*See, e.g., Southwest Wash. Prod. Credit Ass'n v. Seattle-First Nat'l Bank,* 92 Wn.2d 30, 33, 593 P.2d 167 (1979).

[10]Keith G. Meyer, *Agricultural Credit and the Uniform Commercial Code: A Need For Change?,* 34 U. Kan. L. Rev. 469, 491 (1985) (hereafter Meyer, *Agricultural Credit*). *See, e.g., First Nat'l Bank & Trust Co. v. Atchison Cy. Auction Co.,* 10 Kan. App. 2d 382, 699 P.2d 1032 (1985) (auctioneer liable for conversion for selling encumbered farm products); *Ensminger v. Burton,* 805 S.W.2d 207, 211 (Mo. Ct. App. 1991) (auctioneers who sold cattle and turned the proceeds over to the debtor were nonetheless liable to the secured party in conversion).

[11]Reiley, 20 UCC L.J. at 262.

[12]Meyer, *Agricultural Credit,* at 489; Syed A. Salat, *Federal Preemption of the Farm Products Exception: Coherence or Confusion?,* 15 S.U. L. Rev. 53, 54 (1988).

Congress in due course passed the Food Security Act of 1985 in order to change the farm products rule.[13] The Act preempted the law regarding the farm products exception included in UCC § 9-307(1) (the farm products rule).[14]

The Food Security Act of 1985, 7 U.S.C. § 1631, provides in relevant part:

(d) . . .

Except as provided in subsection (e) of this section and notwithstanding any other provision of Federal, State, or local law, a *buyer* who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest.

. . .

(g). . .

(1) Except as provided in paragraph (2) and notwithstanding any other provision of Federal, State, or local law, a *commission merchant* or selling agent who sells, in the ordinary course of business, a farm product for others, shall not be subject to a security interest created by the seller in such farm product even though the security interest is perfected and even though the commission merchant or selling agent knows of the existence of such interest.

(Italics ours.) Paragraph (2) of this section provides for a specific kind of written notice, which if given by the lender to the commission merchant or selling agent, will allow the lender to retain the security interest in the farm product with relation to the commission merchant or selling agent.[15] 7 U.S.C. § 1631(g)(2).

■ The Food Security Act of 1985 explained that the purpose of changing the farm products rule was to avoid the purchaser's exposure to double payment as it creates a bur-

---

[13]Pub. L. No. 198, 99 Stat. 1354 (codified as 7 U.S.C. § 1631 (1987)).

[14]*Kraft, Inc. v. Missouri Farmer's Assoc.*, 816 S.W.2d 278, 281 (Mo. Ct. App. 1991); Janet Richards, *Federal Preemption of the U.C.C. Farm Products Exception: Buyers Must Still Beware*, 15 Stetson L. Rev. 371, 409 (1986).

[15]The Act also provides a method for states to establish a central filing system to give notice to buyers or merchants, 7 U.S.C. § 1631(e)(2), (g)(2)(C), (D), but no such system has been established in Washington. *See* 9 William D. Hawkland et al., *Uniform Commercial Code Series* § 9-307:03, at 119 (1991).

den on interstate commerce. 7 U.S.C. § 1631(a), (b).[16] Even though a statutory declaration of policy has no operative force by itself, it is useful in determining how the legislative body intended the entire statute to operate.[17] A statutory statement of intent can be crucial to the interpretation of a statute.[18]

The old common law rule was that a commission merchant who received property from his principal and sold it under the latter's instruction and paid the principal the proceeds of the sale was guilty of conversion if the principal had no right to sell the property.[19] Under the common law, conversion was considered to be a strict liability tort.[20]

■ The Food Security Act of 1985, 7 U.S.C. § 1631, was intended to protect commission merchants and selling agents

---

[16]7 U.S.C. § 1631 provides in pertinent part:

"(a) Congressional findings

"Congress finds that —

"(1) certain State laws permit a secured lender to enforce liens against a purchaser of farm products even if the purchaser does not know that the sale of the products violates the lender's security interest in the products, lacks any practical method for discovering the existence of the security interest, and has no reasonable means to ensure that the seller uses the sales proceeds to repay the lender;

"(2) these laws subject the purchaser of farm products to double payment for the products, once at the time of purchase, and again when the seller fails to repay the lender;

"(3) the exposure of purchasers of farm products to double payment inhibits free competition in the market for farm products; and

"(4) this exposure constitutes a burden on and an obstruction to interstate commerce in farm products.

"(b) Declaration of purpose

"The purpose of this section is to remove such burden on and obstruction to interstate commerce in farm products."

[17]*Oliver v. Harborview Med. Ctr.*, 94 Wn.2d 559, 565, 618 P.2d 76, 26 A.L.R.4th 692 (1980).

[18]*Spokane Cy. Health Dist. v. Brockett*, 120 Wn.2d 140, 151, 839 P.2d 324 (1992).

[19]*See, e.g., Sanborn Cy. Bank v. Magness Livestock Exch.*, 410 N.W.2d 565, 567 (S.D. 1987); *First Nat'l Bank v. Southwestern Livestock, Inc.*, 859 F.2d 847, 849 (10th Cir. 1988); *Kraft*, 816 S.W.2d at 281.

[20]*See, e.g., Southwestern Livestock*, 859 F.2d at 850 (and cases cited therein).

who sell farm products in the ordinary course of business and so effectively to abrogate the rule of strict liability for conversion in this setting.[21] Commentators agree that the purpose of the Food Security Act of 1985 is to protect against the risk of double payment when a product is encumbered by a security interest.[22]

■ In this case, the commission merchant/second lender argues that because the federal law provides that commission merchants shall not be "subject to" a security interest in the farm product that they sell, it can lend money to the farmer (and take the product as collateral) and will be in first priority even though a prior lender has an earlier perfected security interest in the product. The commission merchant/second lender essentially claims that the protection afforded it as the commission merchant allows it to also become a lender and attain first priority over collateral which is already encumbered. Although it would be possible to give this meaning to the Act, we conclude that it does not comport with the intent of the federal drafters.

The abrogation of the farm products rule was to eliminate the harsh result of transforming buyers and commission merchants into sureties on the farmers' debt.[23] However, it is clear to us that the changes were not made to reorder the normal priority of liens in farm products with regard to competing lenders. The best evidence of Congress's intent is found in the House Committee Report on the Food Security Act of 1985 which states in relevant part:

---

[21]*Kraft*, 816 S.W.2d at 281; *Ensminger*, 805 S.W.2d at 216.

[22]Mark V. Bodine, Note, *Clear Title: A Buyer's Bonus, A Lender's Loss — Repeal of UCC § 9-307(1) Farm Products Exception by Food Security Act § 1324 [7 U.S.C. § 1631]*, 26 Washburn L.J. 71, 79 (1986); Meyer, *Agricultural Credit*, at 491. Eldon H. Reiley, *State Law Responses to the Federal Food Security Act*, 20 UCC L.J. 260 (1988); Salat, 15 S.U. L. Rev. at 55. *See also Lisco State Bank v. McCombs Ranches, Inc.*, 752 F. Supp. 329, 338 (D. Neb. 1990).

[23]*United States v. Progressive Farmers Mktg. Agency*, 788 F.2d 1327, 1330 (8th Cir. 1986); *Ensminger*, 805 S.W.2d at 215 (the common law rule impaired the convenience of commercial transactions and also transformed the market agent into a guarantor of the debts of the farmer).

The bill is intended to preempt state law (specifically the so-called "farm products exception" of the Uniform Commercial Code section 9-307) *to the extent necessary to achieve the goals of this legislation.* Thus, this Act would preempt state laws that set as conditions for buyer protection of the type provided by the bill requirements that the buyer check public records, obtain no-lien certificates from the farm products sellers, or otherwise seek out the lender and account to that lender for the sale proceeds. *By contrast, the bill would not preempt basic state-law rules on the creation, perfection, or priority of security interests.*

(Italics ours.) H.R. Rep. No. 271, pt. 1, 99th Cong., 1st Sess. 110 (1985), *reprinted in* U.S.C.C.A.N. 1103, 1214.[24]

The commission merchant/second lender relies on the case of *FDIC v. Bowles Livestock Comm'n Co.*, 937 F.2d 1350, 1353 (8th Cir. 1991) for the proposition that commission merchants "escape the snag of security interests in farm products they sell unless certain conditions are met". However, in *Bowles*, the auctioneer was not acting as a lender seeking a superpriority over a prior perfected lienholder. The difference between the *Bowles* case and the present case is that in *Bowles* the auctioneer had already paid the farmer (or his agent) the net proceeds of the sales and the lender was seeking to have the commission merchant pay the lender a second time based on a suit for conversion.[25] This appears to be the exact result the Federal Act intended to avoid. However, when the commission merchant or selling agent also chooses to become a lender, the first security interest is not just a "snag" which may result in double payment; it is the legal mechanism through which priorities of security interests are determined.

The commission merchant/second lender argues that a commission merchant can never be subject to a prior security interest even when acting as a lender. The commission agent would have this court read the Act to mean that a commission merchant (or selling agent) whether acting as a

---

[24]*See Lisco State Bank,* 752 F. Supp. at 338 (quoting 9 C.F.R. § 205.202 (1990)).

[25]*FDIC v. Bowles Livestock Comm'n Co.,* 937 F.2d 1350, 1352 (8th Cir. 1991).

seller or as both a seller *and a lender* (and taking the farm product as collateral) should not be subject to a prior security interest. This interpretation makes insecure the security interest *of all first-in-time agricultural lenders.*

In the legislative history of the Act, Congress expressed concern regarding the financial stability of agricultural lending institutions and the continued availability of credit for farmers.[26] The intent of the drafters of the Federal Act appears solely to have been to relieve the commission merchant, selling agent and buyer from liability for double payment. As one noted commentator explains the Act, section 1631(g) means that if a farmer uses a commission merchant to sell the farm product, the commission merchant will not "be subject to any *liability* as a result of selling the farm products". (Italics ours.) 9 William D. Hawkland et al., *Uniform Commercial Code Series* § 9-307:03, at 116 (1991). This goal is quite different from permitting the commission merchant to achieve a superior security interest over a prior perfected lienholder.

There is no indication in the Act or its history, or in the case law or commentary, that Congress was intending to reorder the usual UCC priority rules to give a superpriority to commission merchants who act as lenders. Once commission merchants or selling agents choose to become secured *lenders*, it is reasonable that they check the UCC filings to determine whether the collateral was already encumbered as any other lender must do. Lenders should perform a reasonable search of the appropriate records.[27] A commission merchant, acting solely in the capacity of a commission merchant, would not be liable for conversion when he or she sold the farm product and would not be liable to the lender after paying the net proceeds of the sale to the farmer/debtor. However, if the commission merchant additionally wished to lend money to the farmer *and take a security*

---

[26]H.R. Rep. No. 271, pt. 1, 99th Cong., 1st Sess. 111 (1985), *reprinted in* U.S.C.-C.A.N. 1215.

[27]*In re Esparza*, 118 Wn.2d 251, 257, 821 P.2d 1216 (1992).

*interest in the farm product,* then, like any other secured lender, the commission merchant should check the appropriate records. Insofar as the commission merchant acts as a *lender,* the protection afforded by the Federal Act is inapplicable, and state law will determine the priorities.

The commission merchant/second lender argues, however, that all the first lender has to do to protect its lien is to give direct written notice of the lien in the form provided in the federal law to all potential merchants or buyers. The problem with this seemingly simple solution is that a debtor/ farmer can make this option difficult, if not impossible, by simply delivering the product to a buyer or merchant which the debtor/farmer has not disclosed to the lender. The Federal Act does authorize the inclusion in security agreements of a provision requiring farmers to supply lenders with a list of potential buyers.[28] Although the Federal Act provides for a fine against the farmer who fails to make such disclosure,[29] this may not be a sufficient deterrent to such action when the debtor can obtain all new financing from a commission merchant and put that merchant in first priority by delivering the crop to an undisclosed merchant.[30] In such a situation, the first lender (which had perfected its security interest in the crops) would unexpectedly find itself in second security position behind the merchant who had a later perfected security interest. The lender's only recourse might well be against the farmer who, being in loan default, would very likely be insolvent. The secured party who was in first position can thus be left holding an empty lien.[31]

---

[28]7 U.S.C. § 1631(h)(1).

[29]7 U.S.C. § 1631(h)(3).

[30]*See* Eldon H. Reiley, *State Law Responses to the Federal Food Security Act,* 20 UCC L.J. 260, 282 (1988); Syed A. Salat, *Federal Preemption of the Farm Products Exception: Coherence or Confusion?,* 15 S.U. L. Rev. 53, 63 (1988).

[31]*See* Mark V. Bodine, Note, *Clear Title: A Buyer's Bonus, A Lender's Loss — Repeal of UCC § 9-307(1) Farm Products Exception by Food Security Act § 1324 [7 U.S.C. § 1631],* 26 Washburn L.J. 71, 87 (1986) (commenting that the penalty imposed on the farmer who failed to disclose the merchant or buyer to the lender would be a minimal deterrent to an insolvent farmer looking for more credit to meet insurmountable financial problems). *See also* 2 James J. White & Robert S.

The commission merchant/second lender also argues that commission merchants "forward or lend" to growers the packing and storage charges until they receive proceeds from the sale of the farmer's crops and that under the Court of Appeals decision, the commission merchant might not be protected by the Federal Act. We do not find this a compelling argument because state law protects crop handlers with regard to the fees for transporting, storing, and preparing crops for sale.[32] Additionally, article 9 of the UCC, RCW 62A.9-312(2), directs one to RCW 60.11 to determine conflicting priorities between security interests in crops. Under RCW 60.11.050, liens and security interests which are incurred to produce the crop take priority over prior liens and security interests which were not incurred to produce the crop.

The Court of Appeals decision did not grant summary judgment to the first lender; it held that questions of fact remained to be decided before the relative priorities of the parties could be determined under Washington state law.

We affirm the Court of Appeals decision and hold that the Food Security Act of 1985 protects commission merchants in that capacity from the potential for double liability, but it does not allow such merchants to become secured lenders and take farm products as collateral free of all preexisting perfected security interests.

In sum, we conclude in this case as follows: (1) a commission merchant who sells a farm product in the ordinary course of business is not liable to a secured lender for conversion even if the farmer delivered the crops without the prior authorization of the secured lender; (2) a commission merchant who pays the farmer the net proceeds from the

---

Summers, *Uniform Commercial Code* § 26-14, at 541 (3d ed. 1988) (farmer can foil a lender's attempt to give notice to all potential buyers by selling out of the geographical area).

[32]*See* RCW 60.11.020(3); RCW 60.11.050(3).

sale of the farm product is not thereby liable to the secured lender; but, (3) a commission merchant who lends money to the farmer, and takes a security interest in the farm product, and who seeks to retain the net proceeds from the sale of the farm product in repayment of that loan, is not protected by the Federal Food Security Act of 1985 and the commission merchant must look to state law to determine the priority of the security interests in the collateral. These first two conclusions are mandated by the Federal Food Security Act of 1985 and the third is congruent with the intent of Congress in enacting that law and maintains the normal order of priorities created by article 9.

We affirm the Court of Appeals reversal of the trial court and remand for trial.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.