**FARMER'S BANK, Appellant,**

v.

**DYKES TOBACCO WAREHOUSE, INC., Appellee.**

**No. 95–CA–003313–MR.**

Court of Appeals of Kentucky.

May 16, 1997.

Thomas W. Miller, Lexington, for appellant.

Henry L. Rosenthal, Jr., Winchester, for appellee.

Before GUIDUGLI, KNOPF and SCHRODER, JJ.

*OPINION*

SCHRODER, Judge:

This appeal addresses the extent of the protection to which a warehouseman is entitled under KRS 355.9–307(2) when he is also a creditor. The Rowan Circuit Court granted Dykes Tobacco Warehouse, Inc. (Dykes) summary judgment against Farmer's Bank on the basis that Farmer's Bank failed to comply with KRS 355.9–307( [2] ). Farmer's Bank now argues that Dykes is not entitled to the protection of KRS 355.9–307(2) and that its security interest is superior to Dykes'

unperfected lien on the same tobacco. We agree, and, therefore, reverse and remand.

On January 17, 1994, Dykes advanced $30,000.00 to David Loveless (Loveless) for the production of tobacco. The signed note included the following statement, "I give you a security interest in all tobacco grown by David Loveless on various farms in Menifee Co. Kentucky for 94–95 crop year." It is undisputed that Dykes did not record the security interest in any county clerk's office.

From August 2, 1993 to November 14, 1994, Farmer's Bank loaned Loveless over $31,500.00 to purchase a tobacco base. The following loans were secured by "security agreements on tobacco [on] various dates":

| Loan No. | Date | Financing Statement Filed [1] | Amount | Property secured by the Agreement |
|----------|------|-------------------------------|--------|-----------------------------------|
| 5886 | 8/2/93 | 8/4/93 | $4,084.24 | 14000 lbs. tobacco on self - Denniston Ky and 9000 lbs. tobacco on J.D. Trimble - Denniston Ky |
| Renewal of 5886 | 2/22/94 | 3/2/94 | $2,735.50 | |
| 6748 | 3/30/94 | 4/5/94 | $4,416.91 | Tobacco crops leased from Charley Wilson (795 lbs), Henry Trimble (2962 lbs), Margaret Issac (1004 lbs) and Caulbe Andy (2500 lbs)—1994/95 crops |
| 6871 | 4/11/94 | 4/13/94 | $8,062.84 | 14,462 lbs. tobacco leasing grown on various farms; list in file |
| 6897 | 5/3/94 | | $4,146.92 | Tobacco mortgages dated 3/30/94 and 2/22/94; various crops leased |
| 7283 | 6/15/94 | | $2,025.00 | Extension of security agreements dated 3/30/94 and 4/11/94 on tobacco |
| 7363 | 9/13/94 | | $4,517.00 | Security agreement dated 9/13/94 various tobacco leases; see file for details |
| 7449 | 11/14/94 | | $1,525.00 | Tobacco security agreement dated 2/22/94 |

The tobacco was later sold at Dykes' warehouse for $31,789.57. Since the amount owed Dykes exceeded this amount, Loveless was paid nothing, and all proceeds went to Dykes. On February 9, 1995, Loveless filed a voluntary petition in bankruptcy, and at the initial creditors' meeting, Farmer's Bank learned for the first time that the tobacco had been sold at Dykes'. On April 3, 1995, Dykes received a written notice, sent certified mail, return receipt requested, from Farmer's Bank, regarding its lien.

Although the circuit court granted summary judgment based on KRS 355.9–307(2), Farmer's Bank contends that Dykes is not entitled to the protection given warehousemen by this section because the intent of the statute is to protect unsuspecting middlemen, not warehousemen who also happen to be creditors. In the alternative, appellant maintains that the statute is inapplicable because

Loveless never technically received any proceeds from the sale and, therefore, it provided Dykes notice, as required by the statute, prior to the payment of the sale price to Loveless. We agree with the former argument and therefore decline to address the latter.

■ Under KRS 355.9–401(1)(a), since the collateral in question is both farm products and growing crops, the proper place to file in order to perfect a security interest is the office of the county clerk in the county of the debtor's residence (Menifee) and the county where the land is located (Menifee, at least for part, if not all, of the tobacco). Farmer's Bank, therefore, properly accomplished this task. KRS 355.9–306(2) provides that a security interest continues in collateral regardless of sale or exchange of the collateral unless authorized by the secured party and except where otherwise provided in the arti-

1. The noted financing statements were filed with the Menifee County Clerk's office.

cle. KRS 355.9–307(2) is one of the statutory "or otherwise" exceptions to this subsection. *See Cessna Fin. Corp. v. Skyways Enters., Inc.,* Ky., 580 S.W.2d 491 (1979). KRS 355.9–307(2) provides:

> If any tobacco crop subject to the lien of a security interest is sold at public auction through a duly licensed tobacco warehouse in the ordinary course of business, a bona fide purchaser for value of such crop shall take title thereto free and clear of any such lien, and the warehouseman selling such tobacco crop shall not be liable to the holder of such lien, unless written notice by certified mail, return receipt requested, of such lien, the name and address of the debtor and proper description of the property subject to lien, are given to the tobacco warehouseman prior to the payment of the proceeds of sale to the owner or producer of such tobacco crop.

We are persuaded by appellant's policy argument that KRS 355.9–307(2) was not intended to protect a warehouseman, like Dykes, in its capacity as a creditor of the debtor. The KRS 355.9–307(2) exception was clearly carved out to protect warehousemen, who unknowingly sell tobacco subject to a security interest, from the potential of double liability—once from the farmer and again from the lender who sues them for conversion. We do not believe that the Legislature intended this protection to extend to a warehouseman while he is wearing the hat of a creditor/junior lienholder. Although there are no cases on point in Kentucky, Washington has addressed this problem in *Food Services of America v. Royal Heights, Inc.,* 123 Wash.2d 779, 871 P.2d 590 (1994). The Washington Court held that when the warehouseman also becomes a lender, the perfected security interest remains a "legal mechanism through which priorities of security interests are determined," *Id.* at 790, 871 P.2d at 596, and that a similar statute was not intended "to reorder the normal priority of liens in farm products with regard to competing lenders." *Id.* at 789, 871 P.2d at 595. We believe the same analogy should apply to KRS 355.9–307(2). Therefore, Dykes as a creditor, is not entitled to the warehouseman protection of KRS 355.9–307(2), and summary judgment in Dykes' favor was in error.

For the foregoing reasons, the summary judgment in favor of Dykes is reversed and the matter remanded to the Rowan Circuit Court for a judgment consistent with this opinion.

All concur.