[No. 29885-0-III.   Division Three.   December 11, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. SCOTT QUE SHUPE, *Appellant*.

344

*Frank L. Cikutovich* (of *Stiley & Cikutovich*), for appellant.

*Steven J. Tucker, Prosecuting Attorney,* and *Mark E. Lindsey* and *Andrew J. Metts III, Deputies,* for respondent.

¶1 SWEENEY, J. — This appeal follows a successful prosecution for delivery, possession with intent to deliver, and manufacture of marijuana. The defendant freely admitted that he possessed, delivered, and manufactured marijuana and he claimed to do so under authority of the former Washington State Medical Use of Marijuana Act, chapter 69.51A RCW. Neither the affidavit in support of the search warrants nor the evidence presented at trial addressed the defendant's showing that he was authorized to possess and deliver marijuana, and we therefore reverse the convictions.

## FACTS

¶2 Scott Shupe, along with others, owned and operated a medical marijuana dispensary called Change. Change was located at 1514 West Northwest Boulevard in Spokane.

¶3 In early 2009, several detectives learned from the media that Change was selling medical marijuana. Detec-

tive Tafoya[1] read in a news article that it was selling medical marijuana to patients who could lawfully possess the drug under the former Medical Use of Marijuana Act. Detective Kevin Langford also saw a local newspaper advertisement for a medical marijuana dispensary named Change.

¶4 Several officers on the street also took notice of Change. One of these officers, Officer Gordon Grant, decided to enter Change after he smelled marijuana in Change's vicinity. He did not see any items for sale and smelled the strong odor of marijuana. Officer Robert Collins also entered Change and smelled the strong odor.

¶5 Detective Langford eventually got a copy of Change's business license. From that, he learned that Mr. Shupe was the chief executive officer of Change; Christopher Stevens and Noe Zarate were vice-presidents.

¶6 Police began conducting video surveillance of Change on May 21, 2009. They saw over 25 people come and go from Change every day. They frequently saw Mr. Shupe carrying a duffel or gym bag into and out of Change. The police also observed that three others—Christopher Stevens, Noe Zarate, and Mr. Shupe's son, Chaz Shupe—frequented Change. They saw Mr. Stevens carry a duffel bag into Change. Detective Langford later opined in an affidavit in support of a search warrant, "Scott Shupe is believed to be transporting [m]arijuana in the duffel bag that he carries into the business." Clerk's Papers (CP) at 47.

¶7 In July 2009, Officer T. Douglas got some information about Change when she pulled over a car with expired license tabs. Officer Douglas smelled marijuana coming from the car, and the driver explained that he possessed medical marijuana he bought at Change. He showed the officer a receipt that indicated that he bought 14 grams of "Blueberry" for $200. He also showed the officer the marijuana.

---

[1] The record does not tell us the first names of Detective Tafoya, Officer A. Douglas, and Officer T. Douglas.

¶8 The officers made two other stops. They never sampled any of the marijuana discovered in those stops.

¶9 On August 3, the police got more information on Mr. Shupe. They got a complaint from a neighbor of 726 West Mansfield Avenue. They believed that 726 West Mansfield Avenue was Mr. Shupe's home because it was the address listed on the registration of a red Oldsmobile that they saw Mr. Shupe driving. The neighbor reported to Detective Greg Vandenberg that a marijuana plant was growing in the backyard of 726 West Mansfield Avenue. The neighbor also said that Mr. Shupe appeared to sell marijuana when the homeowner, Mr. Shupe's mother, left for work. However, the neighbor said that Mr. Shupe may not still live there.

¶10 On August 19, police saw Mr. Shupe leave Change and head for 726 West Mansfield Avenue. He got a light blue duffel bag out of his car and walked into the house with it.

¶11 On August 25, the Portland Police Department contacted Detective Langford. It reported that Mr. Shupe was found with four pounds of marijuana and $18,900 in cash. The Portland Police Department advised that Mr. Shupe said that the marijuana was medical marijuana that would be sold at Change.

¶12 On September 4, police saw two people come and go from 726 West Mansfield Avenue. Each visit was about 20 minutes long. Sometime after the visits, Mr. Shupe drove from 726 West Mansfield Avenue to Change. He carried a bag into Change. He returned to 726 West Mansfield Avenue a short time later.

¶13 On September 7, the police observed that the red Oldsmobile appeared to be broken down at 904 East Eleventh Avenue. Utility records showed that the lower unit of 904 East Eleventh Avenue was rented to Mr. Shupe and the mailbox there said "Scott Shupe."

¶14 The next day, Mr. Shupe was seen riding away from 904 East Eleventh Avenue as a passenger in a car driven by

Chaz Shupe. They drove to Change, went inside, and left a short time later. From there, police followed them to 726 West Mansfield Avenue, to a coffee shop downtown, and then back to 904 East Eleventh Avenue. Mr. Shupe and Chaz Shupe got out of the car and walked into the lower unit. Chaz Shupe carried a light blue duffel bag. Detective Langford said, again in the affidavit he later signed, that this was the same duffel bag that Mr. Shupe carried in and out of the shop when it is open for business.

¶15 Detective Langford applied for a warrant to search three addresses: 904 East Eleventh Avenue, 726 West Mansfield Avenue, and 1514 West Northwest Boulevard. His affidavit stated, in part, that in May 2009, Detective Tafoya became aware of a business selling marijuana to qualifying patients. The affidavit explained that the detective received the information from a news story on the Internet. The news report advised that Mr. Shupe dispensed marijuana and that he grew, possessed, and sold marijuana. The report stated the business was in Spokane but did not provide a location. The court issued a warrant. Chaz Shupe gave the police a key to 904 East Eleventh Avenue and police searched each address on September 10. Police arrested Mr. Shupe for delivery of a controlled substance, possession of a controlled substance with intent to deliver, and manufacture of a controlled substance.

¶16 Mr. Shupe pleaded not guilty and moved to suppress evidence obtained in the searches. He challenged the sufficiency of Detective Langford's affidavit because it was vague on dates, times, and specifics about the charges against Mr. Shupe for delivery of a controlled substance. The court concluded that there was probable cause for the charge of possession but thought that probable cause for delivery and intent to deliver was questionable. The court nevertheless denied Mr. Shupe's motion to suppress. The case proceeded to trial, and Mr. Shupe moved to dismiss the charges after the State rested. The court denied the motion, and a jury found him guilty of all three charges.

## DISCUSSION

### FAILURE TO LIST ASSIGNMENTS OF ERROR

¶17 The State first complains about Mr. Shupe's failure to set out specific assignments of error as required by court rule. RAP 10.3(a)(4). And, certainly, Mr. Shupe should follow the rules and list his assignments of error.

¶18 But we will look past strict compliance with the rule, so long as we can identify the issues presented: "Whether or not a party sets forth assignments of error for each issue on appeal, [the] court will reach the merits if the issues are reasonably clear from the brief, the opposing party has not been prejudiced and [the] court has not been overly inconvenienced." *State v. Grimes*, 92 Wn. App. 973, 978, 966 P.2d 394 (1998). Here, the parties agree on the facts, the State has not been prejudiced, and we have easily identified the issues raised by Mr. Shupe.

### SUFFICIENCY OF THE AFFIDAVIT TO SUPPORT THE WARRANT

¶19 Of course, the affidavit in support of the search warrant here must show probable cause. *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995). Probable cause requires that the State set "forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). Said another way, there must be " 'a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched.' " *Id.* (quoting *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)).

¶20 We apply the *Aguilar/Spinelli*[2] test to determine probable cause to support a search warrant based on an informant's tip. *See State v. Jackson*, 102 Wn.2d 432, 433, 688 P.2d 136 (1984). It requires that the State show the informant's (1) basis of knowledge and (2) veracity. *Id.* We will review de novo the court's legal conclusions here because the findings of fact, entered after the suppression hearing, are unchallenged. *See State v. Vasquez*, 109 Wn. App. 310, 318, 34 P.3d 1255 (2001), *aff'd*, 148 Wn.2d 303, 59 P.3d 648 (2002); *see also State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). Indeed, there are no serious factual disputes here on appeal. The State accepted Mr. Shupe's factual recitation for purposes of this appeal. Resp't's Br. at 1.

¶21 The State contends (apparently) that Mr. Shupe's objections to the search warrant for 726 West Mansfield Avenue and 904 East Eleventh Avenue are of no moment because Mr. Shupe admitted that he was guilty of the crimes charged. Resp't's Br. at 7. The State relies on Mr. Shupe's closing argument: "Mr. Shupe admits he possessed marijuana. Mr. Shupe admits he delivered marijuana. Mr. Shupe admits he manufactured it." Report of Proceedings (RP) at 552. The State's contention misses Mr. Shupe's essential point, which, as we understand it, is that he possessed, sold, and manufactured marijuana legally—that is, as medical marijuana. Indeed, the State saw "no reason to deal with the defendant's search warrant sufficiency issues as they have no relevance to the outcome of this case." Resp't's Br. at 7. Why that is so is a bit obtuse.

¶22 Police saw Mr. Shupe going to his place of business, 726 West Mansfield Avenue, and 904 East Eleventh Avenue. They often saw him carrying a duffel bag. They pulled three people over who had left Change, but none were asked

---

[2] *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), *abrogated by Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), *but adhered to by State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136 (1984).

to identify Mr. Shupe, and none did, as the person who sold them marijuana, and no marijuana was seized and tested. Those stopped by police said that they purchased marijuana from Change. Change is a business owned by three people.

## Change

¶23 Mr. Shupe possessed four pounds of marijuana and $18,900 on August 25, 2009, in Oregon. Mr. Shupe told law enforcement that he was buying the marijuana for the Change dispensary in Spokane. The information from the Oregon State Patrol certainly supports that Mr. Shupe was taking marijuana to Spokane.

¶24 Mr. Shupe concedes that there was probable cause for the search of Change based on the officer's detection of the smell of marijuana. But ultimately, police found very little there—some cash receipts, an electronic scale, documents showing medical authorization to possess marijuana, and business cards for Mr. Stevens. No marijuana was found.

## 726 West Mansfield Avenue

¶25 Mr. Shupe argues that the facts relied upon by the State to support the search warrant are either innocuous or hearsay and therefore do not support the conclusion of probable cause for a search of the residence at 726 West Mansfield Avenue.

¶26 This warrant was based on the statement of a neighbor of Mr. Shupe's mother. The neighbor complained that she had seen Mr. Shupe frequent 726 West Mansfield Avenue but she did not know if he actually lived there. The neighbor said that "[Mr.] Shupe *appears* to sell marijuana after the female homeowner leaves for work." CP at 49-50 (emphasis added). The neighbor said there was a marijuana plant in the backyard of the residence.

¶27 The information from the neighbor here is not credible. The neighbor did not see or hear a marijuana sale take

place. She did not see Mr. Shupe handling marijuana. Police did not question the neighbor about her knowledge of marijuana or marijuana plants. Police did not see or verify that the plant she saw was marijuana.

¶28 We conclude that the information provided by this informant is insufficient given this State's reading of *Aguilar/Spinelli*. *State v. Duncan*, 81 Wn. App. 70, 77-78, 912 P.2d 1090 (1996).

*904 East Eleventh Avenue*

¶29 Police saw Mr. Shupe going to his place of business, his business partner's home, his mother's home, and 904 East Eleventh Avenue. The mailbox there had the name "Scott Shupe," and Chaz Shupe gave the officer a key for entry.

¶30 The only person police saw carrying the bag to the 904 East Eleventh Avenue address, however, was Mr. Shupe's son, not Mr. Shupe. They also saw the son carrying the duffel bag other places. The three people pulled over by police never identified Mr. Shupe as the person who sold them marijuana, and no marijuana was seized from them. They stated that they purchased marijuana from Change, a business owned by three individuals. The affidavit contained no information concerning power usage even though police pulled local utility information.

¶31 Police watched Mr. Shupe only part of the time, so it is impossible to know whether he took the duffel bag other places, like the gym.

*Harmless Error*

¶32 Failure to suppress evidence obtained in violation of a defendant's Fourth Amendment rights is constitutional error and is presumed to be prejudicial. *State v. Tan Le*, 103 Wn. App. 354, 367, 12 P.3d 653 (2000). The State bears the burden of demonstrating the error is harmless. *Id.* Constitutional error is harmless only if the

State shows beyond a reasonable doubt that any reasonable jury would have reached the same result without the error. *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002) (quoting *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)).

¶33 The State made no attempt to address the issues surrounding the search warrant in the brief it filed here on appeal. And we are left then to conclude that there was no probable cause to support the search of 726 West Mansfield Avenue or 904 East Eleventh Avenue.

DELIVERY OF MARIJUANA

¶34 Moreover, we would conclude that the evidence is insufficient to support a conviction for delivery of marijuana in any event.

■ ■ ¶35 The State had to prove that on or about September 9, 2009, Mr. Shupe delivered a controlled substance and knew it was a controlled substance. RCW 69.50.401. Here, the controlled substance that was supposedly sold was never recovered. No buyer was ever specifically asked about the identity of the seller. Police never saw Mr. Shupe sell marijuana or recorded that he did. Apparently, police had opportunities to stage a controlled buy but elected not to. Moreover, it is not clear, on this record, that the duffel bag was even used to transport marijuana. The bag was found in one of the houses, and the bag contained marijuana. But it would be inadmissible as the fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963) (concluding that evidence is inadmissible as the "fruit of the poisonous tree" where it has been obtained by illegal actions of the police). More significantly, nothing was mentioned in the undisputed facts about finding the bag.

¶36 We conclude that the evidence here was insufficient to support a conviction for delivery of a controlled substance in any event.

## RCW 69.51A.010(1)(d)—VOID FOR VAGUENESS

¶37 Detective Langford authored the affidavit to support the search warrant. And he was the lead detective here. He testified that he had no training as to how to investigate a medical marijuana dispensary as opposed to a suspected drug dealer. Change was the first dispensary case in Spokane. RP at 209.

¶38 Mr. Shupe asserts that he is an authorized medical marijuana provider. In particular, he urges that he is a "designated provider" and a "designated provider to only one patient at any one time." RCW 69.51A.010(1)(d). The State limits its challenge to the same provision. The parties here disagree on what "one patient at any one time" means.

¶39 To construe the meaning of a statute we look to its wording, the context in which the statute is found, and the entire statutory scheme. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). We will apply the plain meaning of an unambiguous statute. *State v. Villarreal*, 97 Wn. App. 636, 641-42, 984 P.2d 1064 (1999). Ambiguous statutes must be construed. *See Food Servs. of Am. v. Royal Heights, Inc.*, 123 Wn.2d 779, 784-85, 871 P.2d 590 (1994). And "[t]he rule of lenity requires us to interpret an ambiguous criminal statute in favor of the defendant absent legislative intent to the contrary." *State v. Mandanas*, 168 Wn.2d 84, 88, 228 P.3d 13 (2010).

¶40 Mr. Shupe reads the phrase "only one patient at any one time" to mean that he cannot physically give marijuana to more than one person at a time. In other words, Mr. Shupe reads the phrase to cover one transaction at a time. The State urges that "only one patient at any one time" means that Mr. Shupe could be a marijuana provider to only one person at a time. Resp't's Br. at 4-5. This would mean that Mr. Shupe could not keep records showing that he was the provider for 1,280 people. Instead, he would have to be the provider for 1 patient—period. Moreover, the State contends that this is a fact question for the jury. Here, the

jury evaluated the evidence and determined that Mr. Shupe had provided marijuana to more than one patient at a time.

¶41 The question before us is a question of law for two reasons. First, we, not a jury, are charged with the obligation to interpret statutory language. *State v. Hacheney*, 160 Wn.2d 503, 512, 158 P.3d 1152 (2007). Second, the facts here are undisputed. The only question is whether the facts of this case satisfy the statutory language of one patient at any one time or not. *Nat'l Labor Relations Bd. v. Marcus Trucking Co.*, 286 F.2d 583, 590 (2d Cir. 1961) (" '[a] finding of fact is the assertion that a phenomenon has happened or is or will be happening independent of or anterior to any assertion as to its legal effect' " (quoting Louis L. Jaffe, *Judicial Review: Question of Law*, 69 HARV. L. REV. 239, 241 (1955))).

¶42 Mr. Shupe's interpretation of this pivotal phrase is supported by the definition of the word "at." While the term "designated provider" seems to imply an ongoing relationship, the word "at" gives a sense of immediacy. "At" links the language of the first part of the phrase to the second part. "At" is defined as "used as a function word to indicate presence in, on, or near: . . . used as a function word to indicate age or position in time <retire ~ 65> <ready for college ~ 18> <awoke ~ midnight>." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 136 (1993).

¶43 Applying this definition of "at" here, the words "any one time" take on a sense of immediacy, making it, for us, more likely that the phrase could refer to a transaction rather than a relationship. This reading of the word "at" does not appear to encompass the continuous nature of the term "designated provider." The phrase "provider to only one patient at any one time" is at war with itself; it is ambiguous.

¶44 But if "only one patient at any one time" is ambiguous, we must accept the interpretation urged by Mr. Shupe. *See In re Post Sentencing Review of Charles*, 135 Wn.2d 239,

250, 955 P.2d 798 (1998). The legislature's expressed intent here is helpful:

The legislature intends to clarify the law on medical marijuana so that the lawful use of this substance is not impaired and medical practitioners are able to exercise their best professional judgment in the delivery of medical treatment, qualifying patients may fully participate in the medical use of marijuana, and designated providers may assist patients in the manner provided by this act without fear of state criminal prosecution. This act is also intended to provide clarification to law enforcement and to all participants in the judicial system.

LAWS OF 2007, ch. 371, § 1; *see* RCW 69.51A.010.

¶45 And the statute in effect at the time itself accomplishes this purpose. Former 69.51A.005 (2007) reads, in part, as follows:

The people find that humanitarian compassion necessitates that the decision to authorize the medical use of marijuana by patients with terminal or debilitating illnesses is a personal, individual decision, based upon their physician's professional medical judgment and discretion.

Therefore, the people of the state of Washington intend that:

Qualifying patients with terminal or debilitating illnesses who, in the judgment of their physicians, may benefit from the medical use of marijuana, shall not be found guilty of a crime under state law for their possession and limited use of marijuana;

Persons who act as designated providers to such patients shall also not be found guilty of a crime under state law for assisting with the medical use of marijuana.

¶46 The intent then is to make medical marijuana available so that qualifying patients may "fully" participate in the medical use of marijuana. The provision empowers the medical practitioner to exercise only the best professional judgment in delivering care to patients. Significantly, the provision allows designated providers to assist patients

without fear of conviction. RCW 69.51A.005. Given these goals, the proper interpretation of "to only one patient at any one time" is an interpretation that allows the greatest number of qualified patients to receive the medical marijuana treatment that they need. In other words, "only one patient at any one time" means one transaction after another so that each patient gets individual care.

¶47 Mr. Shupe testified that he served only one medical marijuana patient at a time. He never delivered marijuana to an individual who did not have documentation. Change took copies of each patient's medical marijuana patient documentation to keep for its records. Concerned about the "only one patient at any one time," receipts from Change show the time to the minute as to when each patient was served. The State presented nothing to rebut that Mr. Shupe served one patient at a time under this interpretation of the statute.

¶48 The ambiguity has apparently been noticed by the legislature. In *State v. Brown*,[3] the court noted the changes to RCW 69.51A.040 that affect RCW 69.51A.010(1)(d). RCW 69.51A.010(1)(d) contains the "to only one patient at any one time" language. The legislature's amendment of RCW 69.51A.040 in 2011 added additional criteria for determining whether a designated provider complies with the law. RCW 69.51A.040(5); *Brown*, 166 Wn. App. at 104.

¶49 Mr. Shupe has established a prima facie case to support a medical marijuana defense. The State presented no evidence to rebut that defense.

¶50 We reverse the convictions and dismiss the prosecution.

KULIK, J., concurs.

¶51 KORSMO, C.J. (dissenting) — After suppressing all of the evidence, the majority inexplicably and unnecessarily

---

[3] *State v. Brown*, 166 Wn. App. 99, 104, 269 P.3d 359 (2012).

decides to construe the former medical marijuana statute despite the fact that the defense did not challenge the jury instructions below and did not propose any instructions. The issue is moot a couple of times over and was never preserved. There simply is no reason for an advisory opinion on the topic. I also believe that the search warrant for the Mansfield address was supported by probable cause. However, I agree with the majority's disposition of the rest of the case and would remand for resentencing on count II alone.

*Search Warrant*

¶52 The time has come to permit lay witnesses to identify marijuana plants without requiring them to establish expertise in identifying the plant. The issuing magistrate was permitted to consider and credit the neighbor's statement that she saw marijuana growing at the Mansfield residence. There also was much more in the probable cause calculus than the neighbor's statement, and even without it, the warrant was valid for that address.

¶53 "Great deference is accorded the issuing magistrate's determination of probable cause." *State v. Cord*, 103 Wn.2d 361, 366, 693 P.2d 81 (1985). Even if the propriety of issuing the warrant were debatable, the deference due the magistrate's decision would tip the balance in favor of upholding the warrant. *State v. Jackson*, 102 Wn.2d 432, 446, 688 P.2d 136 (1984). In light of the deference owed the magistrate's decision, the proper question on review is whether the magistrate *could* draw the connection, not whether the magistrate *should* do so.

¶54 Washington continues to apply the former *Aguilar/ Spinelli*[4] standards to assess the adequacy of a search

---

[4] *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), *abrogated by Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), *but adhered to by Jackson*, 102 Wn.2d 432.

warrant affidavit. *Jackson*, 102 Wn.2d at 446.[5] As applied in Washington, probable cause based upon an informant's information requires that an affidavit establish both the informant's reliability and basis of knowledge. *Id.* at 443. Where one or both of those factors is weak, independent police investigation can supply corroboration. *Id.* at 445. Despite the development of the *Aguilar/Spinelli* standards as a basis for testing the reliability of tips from unidentified professional informants, Washington has chosen to apply those standards to any person who is not in law enforcement, although a "relaxed" showing relates to the nonprofessional "citizen" informant.[6] *State v. Riley*, 34 Wn. App. 529, 532-33, 663 P.2d 145 (1983).

¶55 The person who reported the marijuana plant was not identified by name, so his/her reliability needed to be established. The police identified this informant as a neighbor, which meant that he/she was not a paid professional informant or some anonymous troublemaker. These facts put the person closer to the reliability side of the continuum. *Riley*, 34 Wn. App. at 533 (quoting *State v. Northness*, 20 Wn. App. 551, 557, 582 P.2d 546 (1978)). Police investigation can further corroborate the neighbor's reliability. *Jackson*, 102 Wn.2d at 445. Here, among other things, the search warrant affidavit explains that Mr. Shupe had prior marijuana grow operations at the Mansfield address. The police also confirmed the neighbor's statement that the house owner, Mr. Shupe's mother, ran an antique business. Mr. Shupe told the press that he was growing marijuana in support of his business. On these facts, the magistrate could conclude that the neighbor was a reliable person.

---

[5] Federal courts now apply a totality of the circumstances test in evaluating the sufficiency of a search warrant. *Gates*, 462 U.S. at 238.

[6] However, a named citizen informant is presumptively reliable. *State v. Wible*, 113 Wn. App. 18, 24, 51 P.3d 830 (2002) (quoting *State v. Northness*, 20 Wn. App. 551, 557-58, 582 P.2d 546 (1978)).

¶56 The critical issue is the neighbor's report of the growing marijuana plant. This information was based on the neighbor's own observations. In this day and age, where billboards and television advertisements for decades have shown growing marijuana plants as part of law enforcement encouragement to report grow operations and many people have personal knowledge of growing marijuana plants, the identity of a marijuana plant is sufficiently in the public consciousness that a magistrate could credit a citizen's statement that he or she saw a marijuana plant. A statement of how the person knew it was marijuana is no longer necessary.

¶57 With that information, there was no question that probable cause existed for the search of the Mansfield house. But even if that information is totally excised from the affidavit, there still was probable cause. The warrant established the following facts in support of searching the Mansfield address:

(1) Scott Shupe publicly admitted growing marijuana for his business, which involved selling marijuana;

(2) Scott Shupe, up until shortly before the search warrant was served, was living at the Mansfield location;

(3) Every time he was under surveillance, including the period after he moved to the Eleventh Avenue location, he still drove from his business and brought his light blue duffel bag into the Mansfield house and always brought it back with him to Change;

(4) On prior occasions, police had found Scott Shupe growing marijuana at the Mansfield address;[7]

(5) Multiple police officers could identify the smell of "fresh" (i.e., processed) marijuana at Change, but none identified growing marijuana there; and

---

[7] Inexplicably, the affidavit does not further detail these prior grow operations, which may well have established probable cause in conjunction with Mr. Shupe's public statements. The judgment and sentence includes prior convictions for manufacturing a controlled substance in both 1994 and 2007.

(6) Police surveillance identified two other grow operation locations, connected to codefendant Christopher Stevens rather than Mr. Shupe, that appeared to provide marijuana for Change.

¶58 From these facts alone the magistrate could conclude that Mr. Shupe was growing marijuana to supply his business, he was not doing so at the business, he was still living at or using the Mansfield address where he previously had been caught growing marijuana, he continued to bring a duffel bag to work every day and continued to bring that same duffel bag to the Mansfield location even after he stopped living there, and he was not personally connected to two other locations where his codefendant appeared to be growing marijuana. In short, Mansfield looked to be the place where Scott Shupe was once again growing marijuana. At a minimum, his ubiquitous duffel bag continued to commute there to and from his business even after he no longer lived on Mansfield, a fact that suggested he was ferrying supplies from the location.[8]

¶59 This evidence was sufficient to establish probable cause. The magistrate was permitted to exercise discretion and issue the search warrant. Accordingly, I would affirm the conviction on count II related to the Mansfield house. There was sufficient evidence to allow the magistrate to issue the warrant for that address. The evidence discovered there supported the verdict on count II.

### Affirmative Defense Statute

¶60 As noted, after suppressing the evidence and dismissing the charges for insufficient evidence, the majority decides to construe the definition of "designated provider" in RCW 69.51A.010(1)(d). I dissent from this needless exercise for several reasons: (1) Mr. Shupe cannot be retried; (2) the statutory scheme has been superseded by the

---

[8] Not surprisingly, the duffel bag contained four pounds of marijuana when police found it. That evidence sufficiently supported the conviction on count II.

newly approved Initiative 502 (LAWS OF 2013, ch. 3) (effective Dec. 6, 2012); (3) the discussion is totally divorced from Mr. Shupe's trial since he never sought any instructions that would have been impacted by construing the statute, nor was he prohibited from making his argument to the jury; and (4) the quantity of marijuana in Mr. Shupe's possession precluded his affirmative defense.

¶61 This discussion is unnecessary for the basic reason that Mr. Shupe is free from any criminal liability by the dismissal of all charges against him due to the deficient search warrant (in the majority's view) and the insufficient evidence of the delivery count. There is nothing left to discuss. The case against him is gone, and he cannot be retried without running afoul of the double jeopardy protections of our constitutions. The opinion could have stopped there. There is no reason to address any additional issues.

¶62 A second reason this discussion is unnecessary involves the recently passed Initiative 502. It imposes a new regime with respect to medical marijuana that will, among other things, divorce marijuana production from marijuana distribution. *See* Initiative 502, § 5. Mr. Shupe's business model will not be possible under the new law, and there really is no need to discuss whether or not it was proper under the 2007 version of the statute. The legislature similarly tried to eliminate the challenged definition in 2011, but that section of the bill was vetoed by the governor. *See* LAWS OF 2011, ch. 181, § 201. There is no reason to construe a statute that, while technically still alive, soon will serve no purpose.

¶63 The third reason this discussion is unnecessary is that no aspect of this case presents the issue. While Mr. Shupe did challenge the statute in this appeal, he did not claim that the trial court erred in some manner concerning the statute. He never presented any jury instructions addressing the topic. He did not argue that the trial court precluded him from arguing his theory of the case. Even if

this case had been returned for trial instead of being dismissed, the discussion would have no practical effects for Mr. Shupe.

¶64 Mr. Shupe does belatedly challenge instruction 23 in this appeal as being incomplete for failing to define the meaning of "one patient at any one time," but his complaint comes too late. He did not object below. He also did not proffer a definitional instruction. Accordingly, he has waived any instructional challenge. *State v. Scott*, 110 Wn.2d 682, 686, 757 P.2d 492 (1988); RAP 2.5(a). And, even if he had not waived it, the trial court is under no obligation to provide definitional instructions in the absence of a request. *State v. Allen*, 101 Wn.2d 355, 358, 361-62, 678 P.2d 798 (1984). There was no request here.

¶65 The final reason this discussion is unnecessary is that Mr. Shupe was not entitled to the affirmative defense provided by the statute because he vastly exceeded the limits of marijuana that could be possessed by a caregiver. The statute required that the combined marijuana of the provider and the patient not exceed the statutory limits for the patient. Former RCW 69.51A.040(3)(b) (2007).[9] Because he far exceeded those limits with the four pounds of marijuana in the blue duffel bag, he was not entitled to the statutory affirmative defense instructions in this case and can hardly benefit from construing the statute.[10] Thus, whether or not the "one patient at any one time" language could bear the construction Mr. Shupe urges, it simply does not aid people who want to employ the fiction of serving only one customer while having the resources to serve many.

[9] Although the amounts have changed under the 2011 legislation, the statute still combines the marijuana possessed by the patient and the provider for meeting the statutory limits. RCW 69.51A.040(1).

[10] One additional point worth noting is that the observation that the prosecutor failed to rebut Mr. Shupe's prima facie medical marijuana defense is incorrect. The evidence of the large quantities Mr. Shupe possessed absolutely obliterated the defense.

¶66 For all of these reasons, the discussion of the statute is unnecessary dicta. It is not our job to issue advisory opinions, and even if it were, this case is not the vehicle to do so. The majority having dismissed the case, I dissent from its unnecessary discussion of the statute.

Review denied at 177 Wn.2d 1010 (2013).